UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Civil Action No. 1:26-cv-05852-UA

-------------------------------------------------------------------X

JANE DOE,

Plaintiff,

-against-

SONY MUSIC PUBLISHING (US) LLC,

SONY MUSIC ENTERTAINMENT,

SONY CORPORATION OF AMERICA,

SONY GROUP CORPORATION, and

JOHN DOES 1–10,

Defendants.

-------------------------------------------------------------------X

**SECOND AMENDED DECLARATION OF JANE DOE IN SUPPORT OF MOTION TO PROCEED UNDER A PSEUDONYM AND TO SEAL OR REDACT IDENTIFYING INFORMATION**

I, Wathsally Coomasaru, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

**<u>I. Purpose of This Declaration</u>**

1. I am the Plaintiff in this action. I submit this second amended declaration in support of my motion for leave to proceed publicly under the pseudonym "Jane Doe" and to

redact and/or seal information that would disclose my legal identity on the public docket.

2. I respectfully request that this declaration, including sensitive factual details concerning my childhood sexual assault, medical conditions, and safety concerns, be filed and maintained under seal, or, alternatively, that those portions and identifying information be redacted from the public docket.

3. I previously submitted a declaration in support of this request on July 9, 2026, and a first amended declaration on July 30, 2026. This second amended declaration supplements and clarifies those prior declarations, corrects and clarifies certain dates based on official court records I subsequently obtained and reviewed (attached hereto as **Exhibit B**), and presents the relevant information in an updated format for the Court's convenience. I do not withdraw any request or position stated in either prior declaration except to the extent expressly modified or clarified herein.

4. I understand that proceeding under a pseudonym does not mean that my identity will be concealed from the Court, Defendants, defense counsel, or other persons authorized to receive it in this litigation under a protective order or court directive.

5. I am not seeking to conceal my identity from Sony or to impair Defendants' ability to defend this litigation. Sony employed me, and Defendants and their counsel are able to verify my identity through employment records and the prior charge filed with the Equal Employment Opportunity Commission (EEOC) concerning this matter (for which the EEOC issued a Notice of Right to Sue).

6. My request is narrowly tailored to prevent my legal name and identifying personal details from appearing on the public federal court docket, where they would be permanently indexed by commercial search engines, public-record aggregators, data brokers, media outlets, and individuals who may seek to locate me.

7. The facts stated herein are based upon my personal knowledge, except where stated to be upon information and belief, and as to those matters, I believe them to be true.

8. I currently reside in New York, New York. I was formerly employed by Defendant Sony Music Publishing (US) LLC as an Executive Assistant supporting senior Information Technology and Finance executives. My employment ended on or about April 25, 2025.

## II. Why Public Identification Would Harm Me

9. Public identification on the docket would permanently associate my legal name with severe childhood trauma, including rape and violent felony assault; diagnoses of complex post-traumatic stress disorder ("C-PTSD") and post-traumatic stress disorder ("PTSD"); sensitive disability-related medical information; and acute personal-safety concerns. My trauma history forms the basis of my PTSD and C-PTSD diagnoses. My employment claims concern alleged disability discrimination based on those conditions, failure to accommodate, retaliation, emotional distress, causation, and damages. The nature and severity of these conditions, their functional limitations, the accommodations requested, Defendants' alleged retaliatory use of their knowledge of my specific disability-related triggers (which

are based on childhood sexual trauma) in response to my protected complaints, and the resulting harm are likely to be relevant to discovery, motion practice, and evidentiary proceedings.

10. If my legal name appears on the public docket, my name, past and future employment history, Sony-related claims, psychiatric and medical diagnoses, and residential history will become permanently linked and publicly accessible. My request is not grounded in mere embarrassment or discomfort, but in the severe nature of the underlying criminal attack, medically documented psychiatric and physical conditions, specific safety risks detailed below, and the irreversible nature of public Internet indexing.

## III. Childhood Sexual Assault and Violent Attack

11. When I was approximately eleven years old, I was the victim of a violent rape and physical assault that nearly resulted in my death.

12. The assault occurred on or about August 21, 1990, in East Elmhurst, Queens County, New York.

13. The perpetrator was Harold Jettoo, a neighbor. The crime was promptly reported to the New York City Police Department.

14. As reflected in the Queens County Supreme Court decision attached as Exhibit B, following a jury trial, Mr. Jettoo was found guilty on April 30, 1991, of two counts of Burglary in the First Degree, two counts of Rape in the First Degree, one count of Rape in the Second Degree, two counts of Sexual Abuse in the First Degree, one

count of Assault in the Second Degree, Criminal Possession of a Weapon in the Fourth Degree, and Endangering the Welfare of a Child.

15. Mr. Jettoo was sentenced to an indeterminate term of eight and one-third to twenty-five years in state prison (Exhibit B). Based on official notification letters I received pursuant to New York's Sex Offender Registration Act (Megan's Law), I understand that he served approximately twenty-two calendar years of that sentence in custody.

16. The criminal prosecution was captioned *People v. Harold Jettoo*, Indictment/Case No. 4937-90, in the Supreme Court of the State of New York, Queens County **(Exhibit B)**.

17. I participated extensively in the criminal prosecution by testifying as a child witness before a jury in the physical presence of the perpetrator, providing sworn statements to law enforcement, assisting prosecutors and victim-services specialists, and providing information that informed a televised "NY's Most Wanted" broadcast and related reenactments concerning the effort to apprehend the perpetrator.

18. The assault caused enduring psychological harm, including chronic anxiety, hypervigilance, severe flashbacks, and debilitating panic responses when an individual stands over me or intrudes into my personal physical space without consent.

19. While my PTSD and C-PTSD symptoms were clinically well-managed and substantially in remission when I commenced employment at Sony Music Publishing, they were severely reactivated when specific workplace interactions mirrored the physical positioning and power dynamics of the childhood assault. These symptoms directly impacted my major life activities and ability to work, forming the basis of my workplace accommodation requests and claims for damages.

**IV. Release of Perpetrator and Ongoing Safety Concerns**

20. I received formal Megan's Law notifications following Mr. Jettoo's release from state custody. Based on those notifications, I understand he was released from prison in or around 2013.

21. I do not have knowledge of Mr. Jettoo's current residence, parole or post-release supervision status, or current sex-offender registry compliance status.

22. I am deeply concerned that prosecuting this action publicly under my legal name would disclose identifying information and provide clues that could enable Mr. Jettoo, individuals associated with him, or others to locate my current residence, whereabouts, daily routines, and personal schedule. After knowledge that identifying information about me previously became public, I was compelled to move from the referenced location (residence) for safety reasons. Public disclosure of my legal name in this action could recreate or intensify that risk.

23. My safety concerns stem from the extreme violence underlying Mr. Jettoo's convictions; the additional alleged violent offenses—assaults and robberies involving two separate female victims—for which he was arrested **after the offenses against me** and before his apprehension, as reflected in the SORA decision attached as **Exhibit B**; the lack of reliable information concerning his current whereabouts; and the unsettling 2016 incident described below. Although I cannot confirm that the individual involved in the 2016 incident was Mr. Jettoo, that incident generated severe and lasting apprehension that public disclosure of my identity would reignite these safety concerns.

## V. 2016 Houston Temple Incident

24. In or around 2016, while I was affiliated with a Buddhist temple in Houston, Texas, a volunteer informed me that an unfamiliar man had come to the facility and asked about me. I do not recall whether he asked for me by name or pointed me out.

25. I do not recall the volunteer's name and do not possess their current contact information.

26. The volunteer described the individual as a short male possessing physical characteristics, an Guyanese accent, and a general appearance that closely matched my recollection of Mr. Jettoo. I do not assert as a verified fact that this visitor was Mr. Jettoo; rather, I recount this event because an unidentified man specifically sought out my personal whereabouts after Mr. Jettoo's release, at my place of worship, causing acute distress and lasting fear.

27. Due to the severe anxiety and fear generated by this occurrence, I ceased attending the temple and ultimately relocated back to New York City in approximately 2017.

## VI. Medical Diagnoses, Treatment, and Clinical Impact

28. I have been medically diagnosed with Complex Post-Traumatic Stress Disorder ("C-PTSD"), Post-Traumatic Stress Disorder ("PTSD"), and other related mental-health conditions, as well as associated cardiovascular comorbidities and sleep apnea.

29. I am under the ongoing care of an internal medicine physician, a cardiologist, and licensed mental health professionals. My ongoing clinical symptoms include panic attacks, hypervigilance, severe sleep disruption, and cardiovascular stress responses triggered by non-consensual physical proximity.

30. Compelling public disclosure of my legal identity in connection with these claims would severely exacerbate my PTSD and anxiety disorders, impair my cardiovascular health, and undermine my ability to actively participate in this litigation. Attached hereto as **Exhibit A** is a letter from my treating internal medicine physician substantiating these clinical concerns.

## VII. Direct Connection Between Trauma History and the Employment Claims

31. This action asserts claims under federal and state law for disability discrimination, failure to provide reasonable accommodations, retaliation, and unlawful termination arising out of my employment with Sony Music Publishing. My PTSD and C-PTSD diagnoses, and the specific triggers associated with them, are central to the legal and factual issues in this lawsuit.

32. During my employment, a senior executive with whom I had no assigned working relationship approached my desk without warning, stood over me while I was seated, and abruptly demanded that I execute tasks for him. This physical posture—being cornered while seated by a standing superior making sudden demands—closely replicated the exact physical posture of my childhood assault (where the perpetrator approached me without warning, stood over me with a knife while I was seated, and issued sudden demands), inducing an acute trauma reaction.

33. I immediately reported this incident to my primary manager, Gregory Prata, and formally disclosed my PTSD diagnosis, it's triggers, and my history as a rape survivor to personnel within Sony Music Publishing's Human Resources / People Experience (PX) department in connection with my accommodation requests.

34. During that confidential disclosure, the head of PX introduced an assistant into the conference call without my prior consent or knowledge, despite that assistant being one of the subjects of my workplace grievance.

35. I believe that the confidential medical and trauma information I disclosed in good faith was subsequently weaponized against me in the workplace.

36. On December 11, 2024, following my explicit disclosure of my rape trauma, PTSD, and specific spatial triggers to Mr. Prata and PX, my two male supervisors, including Mr. Prata, physically removed two heavy chairs from a conference table and positioned them directly in front of my chair at an uncomfortably close distance,

without an intervening table or divider, although one was available, while positioning a remote video monitor directly facing me.

37. In light of my previously disclosed triggers, this physical configuration caused acute psychological distress. I felt physically trapped, unsafe, and subjected to targeted intimidation.

38. Immediately following that meeting, I reported to Sony's corporate medical/nurse's office in acute respiratory and emotional distress, stating that I felt unsafe. Corporate security was summoned, and I was subsequently referred out to seek medical attention at a hospital emergency room.

39. At the emergency department, medical staff registered me under the pseudonym "Jane Doe" to protect my privacy and physical safety, admitted me to a private room, and stationed a guard outside my door.

40. I anticipate that Defendants will conduct extensive discovery into my psychiatric history, medical records, prior trauma, therapy notes, and emotional distress damages. Tying my full legal name to public filings involving these intimate matters would cause irreparable harm to my psychological well-being, personal security, and future professional livelihood.

## VIII. Specific Harms from Public Docket Disclosure

41. If my legal name is published on the docket, I fear that Mr. Jettoo or persons associated with him will be able to easily locate my residence and daily routines.

42. Public identification will cause severe psychological decompensation, including re-traumatization, exacerbation of C-PTSD symptoms, acute panic attacks, and adverse cardiovascular consequences.

43. Public disclosure would subject me to severe stigma and could worsen the professional exclusion I believe I have already experienced. Because I am currently disabled and uncertain whether I will be able to work in the future, disclosure could also impair any future employment opportunities and discourage me from seeking necessary medical and psychological treatment.

44. Because modern federal court dockets are continuously scraped and republished by commercial data brokers and search engines, public disclosure would permanently bind my legal identity to details of childhood sexual violence and severe psychiatric impairment across public search engines worldwide.

**IX. Inadequacy of Partial Redaction**

45. I understand that courts consider whether less restrictive alternatives, such as redacting specific medical records, can sufficiently protect a litigant's privacy.

46. Here, redacting only specific medical exhibits would be inadequate. The complaint alleges that I am a survivor of sexual violence and developed PTSD as a result. My disability-related claims against Sony arise, in part, from the effects and manifestations of that childhood trauma, which also formed the basis for my requests for accommodations under the Americans with Disabilities Act. Accordingly, any docket entry bearing my legal name would connect my identity to

highly sensitive traumatic and medical information, creating a substantial risk of stigma, discrimination, and further harm.

47. Proceeding publicly under the pseudonym "Jane Doe" while maintaining full disclosure to Defendants and the Court is the only mechanism that balances the public's interest in the legal issues with my compelling privacy and safety interests.

**X. Absence of Prejudice to Defendants**

48. I fully recognize that Defendants require access to my identity to conduct discovery, investigate the allegations, and mount a complete defense.

49. I do not seek to conceal my identity from Defendants, defense counsel, or the Court.

50. I am fully prepared to litigate under an appropriate protective order governing confidential discovery pursuant to Fed. R. Civ. P. 26(c), ensuring defense counsel has complete access to my employment and medical records while safeguarding those sensitive materials from public dissemination.

51. Because I was directly employed by Sony Music Publishing and previously participated in an EEOC administrative proceeding concerning these exact events, Defendants possess full institutional knowledge of my legal name, personnel file, and employment history.

52. Granting pseudonym status will not impede Defendants' ability to take depositions, propound written discovery, retain expert witnesses, or present their defense.

**XI. Supporting Exhibits**

53. Attached hereto as **Exhibit A** is a true and correct copy of the medical letter from my treating internal medicine physician detailing my diagnoses and the health risks of public disclosure.

54. Attached as Exhibit B are true and correct copies of criminal-court records from People v. Harold Jettoo, Case No. 4937-90 (N.Y. Sup. Ct., Queens Cnty.), substantiating the underlying convictions and sentence, and specifically identifying me as the victim.

## XII. Requested Relief

56. For the foregoing reasons, I respectfully request that the Court enter an Order:

a. Granting leave for Plaintiff to proceed in this action under the pseudonym "Jane Doe";

b. Directing that Plaintiff's legal name, address, and other identifying personal information be redacted from public filings and docket captions, including information that could identify Plaintiff as the victim of the crimes committed by Harold Jettoo, whose convictions are described in People v. Jettoo, Indictment No. 4937/90 (N.Y. Sup. Ct., Queens Cnty.).

c. Authorizing confidential disclosure of Plaintiff's true identity and identifying materials to Defendants, defense counsel, the Court, and designated litigation personnel pursuant to an appropriate protective order;

d. Directing that this declaration and its exhibits be filed and maintained under seal, or alternatively filed publicly in redacted form with unredacted versions maintained

under seal, to the extent the Court deems necessary;

e. Granting such other and further relief as the Court deems just and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 3, 2026, at New York, New York.

______________________________

**Wathsally Coomasaru**

Plaintiff, proceeding publicly as Jane Doe

Pro Se

New York, NY

Tel: (929) 794-1241

btntrck@gmail.com

**ROMAN M. OSTROWSKI, M. D.**
**DIPLOMATE OF AMERICAN BOARD OF INTERNAL MEDICINE**

**242 EAST 19TH STREET, STE 3**
**NEW YORK, NEW YORK 10003**
**TEL.(212) 475-6249**
**FAX.(212) 533-9428**
**Email: ostrowskimd@hotmail.com**
**NPI: 1154459030**
**TAX ID: 126642822**

7/8/2026

To: The Honorable Judge Presiding
United States District Court
Southern District of New York

Re: Letter in Support of Plaintiff's Motion for Leave to Proceed Anonymously
Case: Jane Doe v. Sony Music Publishing (US) LLC

Your Honor:

I am writing in support of my patient, Wathsally Coomasaru, who is seeking leave to proceed anonymously in the above-captioned matter.

Professional Background:
I am a board-certified internal medicine physician licensed in New York State. I have been providing medical care to Ms. Wathsally Coomasaru since 2018, including treatment for post-traumatic stress disorder (PTSD). Ms. Coomasaru has a documented history of PTSD related to childhood sexual violence perpetrated by Harold Jettoo, who was convicted and served approximately 25 years in prison.

Medical Opinion:

In my medical opinion, public disclosure of Ms. Coomasaru's identity in connection with this litigation would likely result in significant psychological and physical harm, including:
- Re-traumatization and worsening of PTSD symptoms and severe anxiety
- Heightened concerns for her safety and overall mental health

Recommendation:
For these reasons, I respectfully recommend that the Court grant Ms. Coomasaru's request to proceed anonymously and under seal, in order to protect her health, safety, and well-being.

I am available to provide further information to the Court if needed.

Respectfully submitted,

Roman M

NYS
LIC 169726

Roman M. Ostrowski, M.D.
242 East, 19th Street
Suite 3
New York, NY 10003
(212)475-6249

MEMORANDUM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS: CRIMINAL TERM, PART K-7
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THE PEOPLE OF THE STATE OF NEW YORK, :
:
: By: ROBERT CHARLES KOHM, J.
-against– :
: Dated: December 6, 2010
:
: Indictment No.: 4937/90
HAROLD JETTOO, :
:
Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

This matter was before the Court on November 22, 2010 for a risk level assessment and designation hearing, pursuant to Article 6-C ("Sex Offender Registration Act") §168-n of the Correction Law. The defendant was produced before the court and was represented by counsel. Prior to the hearing, both the defendant and his attorney were provided with the risk assessment instrument, case summary and designation form, as prepared by the New York State Board of Examiners of Sex Offenders (hereinafter, the "Board"). Based upon a careful review of the materials provided by the "Board", the official court file for this indictment and the statements made at the hearing by Daniel Guttmann, Esq., attorney for the defendant, and by Assistant District Attorney Daniel Novak, the Court makes the following findings of fact and conclusions of law.

Findings of Fact

At the conclusion of a jury trial held before the Hon. Nicholas Pitaro, now retired, the defendant, on April 30, 1991, was found guilty of 2 counts of Rape in the First Degree, one count of Rape in the Second Degree, two counts of Sexual Abuse in the First Degree, two counts of Burglary in the First Degree, one count of Assault in the Second Degree, Criminal Possession of a Weapon in the Fourth Degree and Endangering the Welfare of a Child. On May 20, 1991, the

defendant was sentenced to indeterminate prison terms of 8⅓ - 25 years on the Rape in the First Degree and Burglary in the First Degree convictions. The judgement of conviction was affirmed (People v. Jettoo, 205 A.D.2d 555(June 6, 1994) and leave to appeal was denied (83 N.Y.2d 1004 (Smith, J., July 28, 1994)). The defendant, a native from Guyana, remains incarcerated, but is subject to a deportation order that has been lodged by INS, as well as a warrant issued by the State of Florida, in connection with a 1990 arrest for the assault and robbery of two separate female victims.

As set forth in the "case summary," [1] the conviction herein arises from a horrific and savage attack upon an 11 year old girl by the defendant, then 26. The defendant, who was then a tenant in the basement apartment of the victim's home, entered the victim's apartment armed with a knife and beat the young girl about the face and body resulting in her loss of consciousness. The defendant then raped the defenseless victim. The victim's father returned home to witness the defendant kneeling between his daughter's legs; she was undressed and appeared to be bleeding. The defendant managed to escape and fled to Florida.[2] The victim was hospitalized for four days due to the injuries to her face & body, which included evidence of sexual penetration and a torn hymen.

Upon the commencement of the hearing, the People introduced into evidence the risk assessment instrument, which assessed the defendant a total risk score of 125 points (Level 3), and the case summary. Neither side elected to introduce any further evidence, instead relying upon oral argument.

## Conclusions of Law

After observing that the total risk factor score was 125, the Court inquired of the defendant whether he would be challenging any of the values assessed by the "Board" for the 15 designated

---

[1] The defendant did not challenge nor seek to modify any of the facts contained in the case summary prepared by the "Board."

[2] While in Florida, he was arrested for the assaults & robberies set forth above.

risk factors. Counsel for the defendant candidly stated: "No, but with one exception, but it really will not alter the level." When asked to be more specific, counsel alluded to risk factor #12 - "Acceptance of Responsibility." It was the defendant's position that since he went to trial professing his innocence and and still maintains that stance, he should not be "punished" for not accepting responsibility. However, counsel for the defendant admitted that even without the addition of 15 points under Risk Factor 12, the defendant would still score 110 points rendering him a Level 3 Sex Offender. The Court then noted that the 15 points assessed by the "Board" were scored against subdivision 2 of Risk Factor 12; specifically, "Not accepted responsibility/refused or expelled from treatment. Counsel for the defendant was then asked whether the defendant had been offered treatment but had refused to participate. Counsel was constrained to answer in the affirmative. When asked whether there was anything else that either counsel or the defendant wished to say at the hearing, counsel stated "no."

As recited in People v Brooks, 308 A.D.2d 99 (2 Dept. 2003), lv to app den 1 N.Y.3d 502, the "due process rights of a convicted sex offender facing a risk level classification under SORA" (see, Doe v. Pataki, 3 F Supp2d 456, 471-472 (SD NY 1998) are "(1) a judicial determination of his risk level classification, (2) advance notice of the classification proceeding, (3) notice of proceeding which includes a statement of its purpose and the Board's recommended risk level classification, (4) representation by counsel, (5) pre-hearing discovery, (6) proof by the state of the facts supporting each factor by clear and convincing evidence, and (7) a right to appeal" (Brooks, supra, at 103).

Here, the Court finds that the defendant was afforded his due process rights 1 - 5, and that at the hearing he conceded the values assessed by the "Board" as to 14 out of the 15 risk factors. With respect to risk factor 12, he admitted that he was offered treatment but refused to participate. The Court finds that in so doing, the defendant has unequivocally refused to accept responsibility for the acts for which he was found guilty. Therefore, the Court further finds that the People have

---

As the defendant correctly stated, even were the 15 points assessed under risk factor 12 excluded, he would still score 110 points and be designated a Level 3 Sex Offender.

proven the facts supporting the "Board's" determination by clear and convincing evidence.[3] (Correction Law, § 168-n(3); People v Mingo, 12 N.Y.3d 563).

Accordingly, the Court holds that the final risk level determination for the defendant is Level 3, and he is hereby designated a Sexually Violent Offender.

Order signed herewith.

The Clerk is directed to forward copies of this decision and order to the Division of Criminal Justice Services' Sex Offender Registry Unit, to the defendant at his place of incarceration, to the attorney for the defendant and to the People.

Date: December 6, 2010

Robert Charles Kohm
J.S.C.

[3] As the defendant correctly noted, even were the 15 points assessed under risk factor 12 deducted, he would still score 110 points and be designated a Level 3 Sex Offender.

THE PEOPLE OF THE STATE OF NEW YORK )
VS )
)
1. HAROLD JETTOO )
DEFENDANT )

STATE OF NEW YORK
COUNTY OF QUEENS

900028843

DET. VITO NAVARRA OF QSCS, SHIELD 3812, BEING DULY SWORN, DEPOSES AND SAYS THAT ON OR ABOUT THE DATE OF MAY 3, 1990 AT ABOUT 3:40PM [redacted]OUNTY OF QUEENS, STATE OF NEW YORK, THE DEFENDANT COMMITTED THE OFFENSES OF:

| | |
|---|---|
| PL 140.30-2 ✓ | BURGLARY IN THE FIRST DEGREE |
| PL 140.30-3 | BURGLARY IN THE FIRST DEGREE |
| PL 120.10-4 ✓ | ASSAULT IN THE FIRST DEGREE |
| PL 120.05 | ASSAULT IN THE SECOND DEGREE |
| PL 120.05-2DI | ASSAULT IN THE SECOND DEGREE |
| PL 120.05-6 | ASSAULT IN THE SECOND DEGREE |
| PL 130.35-1 ✓ | RAPE IN THE FIRST DEGREE |
| PL 130.30 | RAPE IN THE SECOND DEGREE |
| PL 130.60-2 | SEXUAL ABUSE IN THE SECOND DEGREE |
| PL 130.65-1 | SEXUAL ABUSE IN THE FIRST DEGREE |
| PL 260.10 ✓ | ENDANGERING THE WELFARE OF A CHILD |
| PL 265.01-2DA ✓ | CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE |

UNDER THE FOLLOWING CIRCUMSTANCES:

DEPONENT STATES BASED ON INFORMATION SUPPLIED BY [redacted] THAT AT THE ABOVE MENTIONED DATE, TIME AND PLACE, THE DEFENDANT, KNOWINGLY ENTERED OR REMAINED UNLAWFULLY IN THE DWELLING OF [redacted] WITH INTENT TO COMMIT A CRIME THEREIN, AND IN EFFECTING ENTRY INTO OR WHILE IN THE BUILDING OR IMMEDIATE FLIGHT FROM THE DWELLING, THE DEFENDANT CAUSED PHYSICAL INJURY TO [redacted] WHO WAS NOT A PARTICIPANT IN THE CRIME. [redacted], THE OWNER OF SAID BUILDING DID NOT GIVE THE DEFENDANT PERMISSION AND AUTHORITY TO ENTER OR REMAIN IN SAID BUILDING.

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT KNOWINGLY ENTERED OR REMAINED UNLAWFULLY IN THE DWELLING OF [redacted] WITH INTENT TO COMMIT A CRIME THEREIN, AND IN EFFECTING ENTRY OR WHILE IN THE BUILDING OR IN IMMEDIATE FLIGHT FROM THE DWELLING, THE DEFENDANT USED OR THREATENED THE IMMEDIATE USE OF A

CONTD NEXT PAGE

900028843

DANGEROUS INSTRUMENT, TO WIT: KNIFE. [redacted] THE OWNER OF SAID DWELLING DID NOT [illegible] DEFEN[illegible] ENTER OR REMAIN IN SAID DWELLING.

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT, IN THE COURSE OF THE COMMISSION OR ATTEMPTED COMMISSION OF A FELONY OR IMMEDIATE FLIGHT THEREFROM, CAUSED SERIOUS PHYSICAL INJURY, TO WIT: THE CHILD WAS BEATEN UNCONSCIOUS BEATEN ABOUT THE FACE AND BODY; SUFFERED A KNIFE WOUND TO HER HAND AND SUBSTANTIAL PAIN TO [redacted] WHO WAS NOT A PARTICIPANT IN THE CRIME.

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT, WITH INTENT TO CAUSE SERIOUS PHYSICAL INJURY TO [redacted] CAUSED SUCH INJURY, TO WIT: THE CHILD WAS BEATEN UNCONSCIOUS BEATEN ABOUT THE FACE AND BODY; SUFFERED A KNIFE WOUND TO HER HAND AND SUBSTANTIAL PAIN TO [redacted]

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT, WITH INTENT TO CAUSE PHYSICAL INJURY TO [redacted] CAUSED SUCH INJURY, TO WIT: THE CHILD WAS BEATEN UNCONSCIOUS BEATEN ABOUT THE FACE AND BODY; SUFFERED A KNIFE WOUND TO HER HAND AND SUBSTANTIAL PAIN TO [redacted] BY MEANS OF A DANGEROUS INSTRUMENT, TO WIT, KNIFE. THE SUBJECT MATTER OF THIS CHARGE IS A VIOLENT FELONY OFFENSE AS THAT TERM IS DEFINED IN SECTION 70.02 OF THE PENAL LAW

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT, IN THE COURSE OF THE COMMISSION OR ATTEMPTED COMMISSION OF A FELONY OR IMMEDIATE FLIGHT THEREFROM, CAUSED PHYSICAL INJURY, TO WIT: THE CHILD WAS BEATEN UNCONSCIOUS BEATEN ABOUT THE FACE AND BODY; SUFFERED A KNIFE WOUND TO HER HAND AND SUBSTANTIAL PAIN TO [redacted] WHO WAS NOT A PARTICIPANT IN THE FELONY.

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT, BEING MALE, ENGAGED IN SEXUAL INTERCOURSE WITH [redacted] A FEMALE BY MEANS OF FORCIBLE COMPULSION.

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT, BEING A MALE OVER EIGHTEEN YEARS OF AGE, ENGAGED IN SEXUAL INTERCOURSE WITH [redacted] FEMALE LESS THAN FOURTEEN YEARS;.

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT, SUBJECTED [redacted] A PERSON LESS THAN FOURTEEN YEARS OLD; TO SEXUAL CONTACT BY TOUCHING HER VAGINA WITH HIS PENIS.

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT, SUBJECTED [redacted] O SEXUAL CONTACT BY TOUCHING HER VAGINA WITH HIS PENIS BY MEANS OF FORCIBLE COMPULSION;

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT, KNOWINGLY ACTED IN A MANNER LIKELY TO BE INJURIOUS TO THE PHYSICAL, MENTAL AND MORAL WELFARE OF [redacted] A FEMALE CHILD LESS THAN SEVENTEEN YEARS OLD.

AND THAT AT THE AFORESAID DATE, TIME AND PLACE, THE DEFENDANT, KNOWINGLY AND UNLAWFULLY POSSESSED A KNIFE WITH INTENT TO USE THE

CONTD NEXT PAGE

SAME UNLAWFULLY AGAINST ANOTHER.

DEPONENT STATES THAT HE IS INFORMED BY THE COMPLAINANT, WATHSALLY COOMASARU, AN ELEVEN YEAR OLD FEMALE, THAT THE DEFENDANT ENTERED THE APARTMENT OF [redacted] WITH A KNIFE WITHOUT PERMISSION OR AUTHORITY. THE DEFENDANT THEN SLASHED HER HAND WITH THE KNIFE CAUSING A LACERATION. THE DEFENDANT FURTHER BEAT THE COMPLAINANT ABOUT THE FACE AND BODY CAUSING HER LACERATIONS, CONTUSIONS ABRASIONS AND SUBSTANTIAL PAIN AND LOSS OF CONSCIOUSNESS. THE DEFENDANT THEN PLACED HIS PENIS INTO THE VAGINA. THE COMPLAINANT WAS ADMITTED TO ELMHURST HOSPITAL FOR 4 DAYS DUE TO THE AFOREMENTIONED INJURIES AND THERE WAS EVIDENCE OF PENETRATION TO HER VAGINA..

FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

SWORN TO BEFORE ME ON THE TWENTY-FIRST DAY OF AUGUST 19..

8-21-90

DATE SIGNATURE